UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IAN RAWLS, Plaintiff, v. SAMUEL BYRD, et al., Defendants. | ) | No. 2:24-cv-00445-JRO-MG |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO EXHAUSTION DEFENSE AND PROVIDING NOTICE OF INTENT TO GRANT SUMMARY JUDGMENT INDEPENDENT OF THE MOTION**

Plaintiff Ian Rawls, an inmate incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"), filed this action contending that his constitutional rights were violated when he injured his feet and ankles during his kitchen job and was denied medical care. Dkt. 1.

Defendants Dr. Byrd and Centurion move for summary judgment arguing that Rawls failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons explained below, Defendants' motion for summary judgment, dkt. [31], is **denied**. In addition, the Court **notifies** Defendants of its intent to grant summary judgment for Rawls on the exhaustion issue. Rawls's motion for evidentiary hearing, dkt. [36], is **denied** as unnecessary.

## I. SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, which is a way to resolve a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment

is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that might be relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Indeed, "[t]he court has no duty to search or consider any part of the record not specifically cited" in

accordance with the local rules. S.D. Ind. L.R. 56 1(h); *see* S.D. Ind. L.R. 56 1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. . . . The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.").

## II. FACTUAL BACKGROUND

### A. Grievance Process

At all times relevant to the claims in this suit, Rawls was an Indiana Department of Correction ("IDOC") inmate who was incarcerated at Wabash Valley. Dkt. 1 at 1.

The IDOC has a standardized offender grievance process which was in place during the time Plaintiff alleges his rights were violated. *See* dkt. 34-2 at 1. IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the Indiana Department of Correction policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies using that procedure. *Id.* at 1, 3. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 1, 3, 9–13. Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. *Id.*

**B. Rawls's Attempts at Exhaustion & Grievance Records**

According to his complaint, Rawls was injured during his kitchen job and received inadequate medical care from Dr. Byrd, and Centurion refused to pay for him to get an MRI. Dkt. 1.

On April 1, 2024, Rawls submitted a formal grievance regarding the incidents that gave rise to the complaint, which was numbered grievance #24-174973. Dkt. 1 at 18; Dkt. 34-3 at 6. In that grievance, Rawls stated:

> I've put in numerous complaints about my feet. Both of them are swollen and the ankles and the foot. It's very painful and complicated to walk on and I've asked medical staff as well as Dr. Byrd to send me to an outside doctor to have an MRI done on both of my feet and I've constantly have been denied this serious medical attention . . .

Dkt. 34-3 at 3.

The grievance specialist forwarded the grievance to Sara Bedwell, Melissa Corrigan, and Carla Coakley, and requested that they review and provide a response to the grievance office. *Id.* at 5. On April 30, 2024, Grievance Specialist Carla Coakley received and reviewed the grievance, and responded: "You have an upcoming chronic care appointment with onsite MD very soon. This can be discussed at this time." *Id.* at 4. The grievance was marked as "resolved." *Id.*

Rawls filed a level one appeal but never received any response. Dkt. 37 at 2. Rawls followed up by sending a request to the Wabash Valley grievance specialist but still received no response. *Id.*

On November 19, 2024, Rawls filed another grievance related to the issues with his feet and ankle, grievance #24-195723, seeking treatment from a foot

doctor. Dkt. 34-3 at 15. The grievance specialist forwarded the grievance to Sara Bedwell and Barbara Riggs and requested that they review and provide a response to the grievance office. *Id.* at 13. In response, the grievance specialist indicated "records show x-rays were completed and you are scheduled with the provider very soon." *Id.* at 16. The grievance was marked as "resolved." *Id.* at 12.

On January 1, 2025, Rawls submitted grievance #25-199611 regarding his ankles. *Id.* at 27. The grievance specialist forwarded the grievance to Sara Bedwell and Barbara Riggs and requested that they review and provide a response to the grievance office. *Id.* at 25. The grievance response indicated that Rawls was seen in May and August 2024 and January 2025 for his ankle, and that Dr. Byrd submitted a consult to Rubicon MD, a consult for an MRI, and a consult with orthopedics were scheduled. *Id.* The grievance response also indicated that Rawls was scheduled again with Dr. Byrd on January 29, 2025. *Id.* The grievance was marked as "resolved." *Id.* at 23.

## III. DISCUSSION

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances

and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

As an initial matter, the purpose of the grievance process is to alert the prison to the nature of the problem. *See Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that purpose of grievance process is to alert prison officials of a problem, not provide personal notice to prison staff that he or she may be sued); *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) ("[A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought." (cleaned up)). The undisputed evidence reflects that the subject matter of Grievance #24-174973, #24-195723, and #25-199611 concerned the medical issues at the heart of Rawls's complaint—medical care for his injured feet and ankles.

Defendants argue on summary judgment that Rawls failed to fully exhaust the grievance process because they "have no record" of his first or second level

appeals. Dkt. 32 at 4. However, in response to summary judgment, Rawls states that he filed a level one appeal, but never received any response. Dkt. 37 at 2. Rawls followed up by sending a request to the Wabash Valley grievance specialist, but still received no response. *Id.*

In their reply brief, Defendants ask the Court to discredit Rawls's testimony because it was not presented in an affidavit. Dkt. 39 at 1. But Defendants' arguments regarding presentation of evidence are irrelevant in light of controlling precedent. The Seventh Circuit has made clear that a prisoner who has gained all the relief that is available through the prison's administrative process need not appeal further simply to satisfy the PLRA's exhaustion requirement—even if the administrative process includes additional steps that the prisoner has not yet completed. *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005). "The . . . notion that [the plaintiff] should have appealed to higher channels after receiving the relief he requested in his grievances is not only counter-intuitive, but it is not required by the PLRA." *Id.* In *Thornton*, the plaintiff asked in his first grievance to be moved out of a "dangerous" cell and for clean mattress. Because he received this relief, he did not have to appeal even though an appeal was part of the grievance process. *See also Dowaun v. Wexford Health Sources, Inc.*, No. 21-2957, 2023 WL 5348345, at *2 (7th Cir. Aug. 21, 2023) ("[B]y the time the prison replied to his grievances, he had received all the treatment he had requested for his left hand and it had healed. Having prevailed without going to the Board, he did not need to exhaust further by appealing to it.").

This is especially true here, where the focus of Rawls's complaint is his ongoing medical issues with his feet and ankles. *See* dkt. 1; *see also* dkt. 16 at 4 (allowing Rawls to proceed on an Eighth Amendment deliberate indifference claim against Dr. Byrd for inadequate treatment of Rawls's feet and ankles, and a *Monell* claim against Centurion for its policy or practice of denying inmates MRIs or surgery due to their costliness). *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.").

The focus of Rawls' complaint, and likewise the focus of his grievances, was to obtain medical care for his feet and ankles. Dkt. 1; Dkt. 34-3 at 3, 15, 27. Upon receipt, the grievance specialist forwarded the grievances to health care staff to obtain a response. Dkt. 34-3 at 5, 13, 25. The record is clear that medical staff, including Dr. Byrd, were on notice of Mr. Rawl's feet and ankle issues. Likewise, the grievance specialist responded to each of Rawls' grievances to let him know what appointments, consultations, and procedures Rawls had upcoming. While Rawls may not have fully received the requested relief in response to his first grievance #24-174973, he obtained the requested relief by his last grievance #25-199611. In "resolving" that grievance, the grievance specialist gave Mr. Rawl's the relief he sought—being scheduled with an offsite provider.

Courts in this circuit have reached similar conclusions. *See, e.g.*, *Carson v. Shah*, 2019 WL 2338502, at *3 (S.D. Ill. June 3, 2019) (prisoner who received

the relief requested when he was sent to an ophthalmologist within the timeframe for an appeal did not need to appeal denial of grievances); *Martin v. Cook Cty. Dep't of Corr.*, 2013 WL 1181491, at *5 (N.D. Ill. Mar. 20, 2013) (detainee at Cook County Jail who complained of dental pain and received referral to dental services was not required to appeal grievance response); *Jones v. Bates*, 2012 WL 43464, at *3 (N.D. Ind. Jan. 6, 2012) (because prisoner's medical issue was resolved, there was no need to appeal that portion of grievance); *Myers v. McAuley*, 2002 WL 31006131, at *3 (N.D. Ill. Sept. 5, 2002) ("Because the plaintiff's concerns about the lack of medical attention were supposedly being addressed and rectified by the health care unit, there would have been no reason to appeal the decision to the next level of review."). Here, Rawls received the requested relief he sought in response to his grievances. He was not required to further pursue the grievance process to comply with the PLRA.

Moreover, there is a dispute of fact on whether Rawls did, in fact, appeal upon receiving confirming of his scheduled medical appointment. Dkt. 37 at 2. The fact that Defendants disagree establishes a dispute of fact.

Accordingly, the Court finds that Rawls either fully exhausted the grievance process under *Thorton* or alternatively that there is a dispute of material fact that precludes summary judgement. Either way, Defendants cannot prevail on their motion.

## IV. RULE 56(F) NOTICE AND FURTHER PROCEEDINGS

For the reasons stated above, Defendants' motion for summary judgment, dkt. [31], is **denied**. Rawls's motion for evidentiary hearing, dkt. [36], is **denied as unnecessary.**

Further, under Rule 56(f)(1), the Court gives the Defendants notice of its intent to grant summary judgment in Plaintiff's favor on the issue of exhaustion. Defendants have **through September 10, 2026,** to show cause why summary judgment should not be granted. Alternatively, Defendants may withdraw their affirmative defense by this date.

**SO ORDERED**.

Date: 8/19/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

IAN RAWLS
121979
WABASH VALLEY – CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All Electronically Registered Counsel